JON M. SANDS
Federal Public Defender
District of Arizona
2285 S. 4th Avenue, Suite 2E
Yuma, Arizona  85364
Telephone: 928-314-1780

BRENDA A. SANDOVAL,
AZ. State Bar #022933
Asst. Federal Public Defender
Attorney for Defendant
Brenda_Sandova@fd.org

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Ruben Navarro Figueroa,<br><br>Defendant | No. CR-24-01818-PHX-SHD<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>*defendant not in custody* |

Defendant, Ruben Navarro Figueroa, who is not in custody by and through undersigned counsel, respectfully asks this Court to consider the following matters when determining a sentence in this case. Mr. Navarro Figueroa further requests a sentence of time served (five days) accompanied by a term of supervised release. The attached Memorandum supports this request.

RESPECTFULLY SUBMITTED: February 12, 2026.
JON M. SANDS
Federal Public Defender

*s/Brenda A. Sandoval*
Brenda A. Sandoval
Asst. Federal Public Defender

1

**MEMORANDUM**

<u>Mr. Navarro Figueroa's individualized circumstances in view of § 3553(a), warrants a sentence of time served (five days).</u>

After *United States v. Booker*, the Sentencing Guidelines range is advisory, and courts must consider it as just one of more than a half-dozen statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). See 543 U.S. 220, 259-60, 125 S.Ct. 738, 764-65 (2005); see also *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007) (Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. § 3553(a)); *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007) (same).   The primary directive in the actual language of § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. (Emphasis added). After *Booker*, *Kimbrough,* and *Gall*, therefore, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a). See *Gall*, 552 U.S. at 41, 128 S. Ct. at 591 (reversing Court of Appeals and reinstating a probationary sentence where advisory sentencing range was 30-37 months).

In two more summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 555 U.S. 350, 129 S. Ct. 890 (2009); *Spears v. United States*, 555 U.S. 261, 129 S. Ct. 840 (2009). "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson*, 555 U.S. at 352, 129 S. Ct. at 892 (emphasis in original). In other words, a sentencing court may not rely on the Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a).

**ARGUMENT:**

Mr. Navarro Figueroa submits the following factors for the court to consider in determining a sentence in this case.

1. <u>During the height of the COVID-19 pandemic, Mr. Navarro Figueroa, an individual battling with substance abuse issues became overwhelmed with desperation to provide for his family. When he could no longer afford his and his family's living expenses, he and his significant other, the co-defendant began purchasing firearms to resell them.</u>

Prior to his participation in the events leading up to his arrest in this matter, Mr. Navarro Figueroa lived with his significant other, her children from a prior relationship, and their child in Yuma, Arizona. (See PSIR ¶ 78). He also provided financial assistance to his eldest children from his prior marriage. (See PSIR ¶ 76). To support his family, Mr. Navarro Figueroa worked seasonally in the agricultural industry and at his brother's tire shop off season. (See PSIR ¶¶ 90 and 91).

When the COVID-19 pandemic hit, Mr. Navarro Figueroa and his significant other were financially wrecked. Due to the quarantine, his significant other lost her job. (PSIR ¶ 10). He also was unable to obtain stable full-time employment and unable to afford his family's living expenses. Mr. Navarro Figueroa, an individual with severe substance abuse issues quickly grew desperate to solve his financial troubles and took bad advice from so called "friends" who did not have his best interests in mind. (See PSIR ¶ 28). Shortly thereafter, he asked his significant other to purchase firearms on his behalf so that he could resell them and earn money to pay for their family's living expenses.

From December 12, 2021, to February 11, 2022, a time period to two months, Mr. Navarro Figueroa and his significant other participated in the events which led to their arrests in this case. (PSIR ¶ 23). While he initially denied his involvement when questioned by law enforcement, he admitted his conduct in this offense when he pleaded guilty to this offense and candidly advised the PSIR writer of the circumstances

surrounding this offense. (PSIR ¶¶ 3 and 27). Mr. Navarro Figueroa has also done his best to comply with all of the orders of this Court.

Today, he asks this Court to have mercy on him when considering his recent traffic infractions. Unfortunately, he has had transportation issues. Mr. Navarro Figueroa has attempted to avoid them in order to continue working and fulfilling his responsibilities as a father. In addition, while he relapsed when his supervision commenced, he successfully completed substance abuse treatment and has remained sober for over a year. (See PSIR ¶ 87 and Exhibit 1). Considering Mr. Navarro Figueroa's particular circumstances, a sentence of time served (five days) accompanied by a term of supervised release is a reasonable sentence.

2. <u>Despite having difficult childhood, Mr. Navarro Figuroa has shown a strong desire to remain sober and continue maintaining stable employment to provide for his family.</u>

Mr. Navarro Figueroa was born into a struggling working-class family in Los Angeles, California. (See PSIR ¶ 73). A couple of years later, the family moved to San Luis, Arizona. *Id.* At the time, Mr. Navarro-Figueroa had a peaceful life. According to Mr. Navarro Figueroa, on Sundays, his parents took him and his siblings to the movies. Afterwards, they enjoyed dinner at Peter Piper Pizza in Yuma.

Unexpectedly, one day, immigration law enforcement arrested his father. That day, the government deported his father, an immigrant with an expired visa to Mexico. (See PSIR ¶ 74). Mr. Navarro Figueroa, a thirteen-year-old boy at the time was beside himself with grief. He knew that his family and life would never be the same again. When the government deported his father, Mr. Navarro Figueroa's mother had work two full- time jobs, his older brother joined gangs, and his lovely Sunday family dinners ended. *Id.* In spite of experiencing chronic depression and anxiety, he graduated high school and sought higher education. (See PSIR ¶ 89).

4

In an effort to self-medicate, he often used drugs. (See PSIR ¶¶ 74 and 85). He also spent time with his brothers and their fellow gang members. Eventually, he developed severe substance abuse issues, which caused him to have lapses in judgment and contacts with the criminal justice system.

As a younger man, Mr. Navarro Figueroa married his high school girlfriend. They are now the parents of two children, a son, age 16 and daughter, age 15. They had a troubled marriage, which ended in separation. His estranged wife is currently serving a prison sentence due to substance abuse issues. Although his mother adopted his children, Mr. Navarro Figueroa now lives with them and his mother.

After separating from his wife, he began a long-term relationship with Cheyenne Ingram, the mother of his youngest daughter, and the co-defendant in this case. Their daughter is now five-years old. (See PSIR ¶ 78). Because they both had substance abuse issues, their relationship was toxic from the beginning. While their romantic relationship ended, they are in a good coparent relationship. (See PSIR ¶ 79). In addition, to reduce his stress level and help others in the community, Mr. Navarro Figueroa coaches youth soccer. (See PSIR ¶ 80).

Mr. Navarro Figueroa deeply regrets his involvement in the events leading up to his offense. He continues to maintain full-time employment at the Yuma Golf and Country Club and also started his own yard maintenance business. (See PSIR ¶ 90). He also continues to remain sober in hopes of building a brighter future for himself and his children. He also submits that he will avail himself of training and rehabilitation programs to the extent they are available to him.

3. <u>A sentence of time served (five days) accompanied by a term of supervised release reflects the seriousness of the offense provides deterrence for further criminal conduct, protects the public and provides for Mr. Navarro Figueroa's special needs</u>.

The facts in this case call for a sentence below the guideline range. Mr. Navarro Figueroa, now a 34-year-old man individual had a difficult childhood caused by his father's deportation. He has also struggled with substance abuse issues since his youth. (See PSIR ¶85). To his credit, he has taken substantial steps to rehabilitate including participating and completing substance abuse treatment programs. (See PSIR ¶87 and Exhibits). He has had a sober life for over a year now.

While the record provides that he has had multiple contacts with the criminal justice system, those contacts are related to his past substance abuse issues. Albeit that, multiple offenses count for criminal history points, with the exception of a low-level felony offense, the record is comprised of misdemeanor convictions. More recently, he acquired traffic violations, where he only received fines. Clearly Mr. Navarro Figueroa's criminal history is overrepresented.

Further, while there are accusations listed in paragraphs 56-69 and 71, a court of law never found him guilty of the charged conduct of those offenses. At best, they are mere allegations. Therefore, the Court should not give any weight to that information when determining a sentence in this matter.

Moreover, any sentence exceeding time served (five days) would only have a diluted effect. It is well-recognized that longer sentences do not have a stronger deterrent effect, and, in fact, can undermine the goals of rehabilitation and deterrence. See Natal Inst. Of Justice, Five Things about Deterrence (June 5, 2016) ("[P]rison sentences (particularly long sentences) are unlikely to deter future crime. Prisons, actually, have the opposite effect…").[1]  A sentence no greater than time served (five days) coupled with a term of supervised release would have the desired impact because it sends a message that a considerable period of incarceration is appropriate, while also accounting for the

---

[1]    Available online at <https:nij.ojp.gov/topics/articles/five-things-about-deterrence>. The National Institute of Justice is the research and development agency of the Department of Justice. See about NIJ, available at https://nj.ojp.gov/about-nij.

mitigation presented by Mr. Navarro Figueroa's personal history and characteristics. Such a sentence is a just punishment.

**CONCLUSION**:

Considering the sentencing factors outlined in § 3553(a), the stipulated plea agreement, and the totality of the circumstances in Mr. Navarro Figureroa's case, a sentence of time served (five days) coupled with a term of supervised release is sufficient but not greater than necessary to meet the statutory purposes of sentencing.

RESPECTFULLY SUBMITTED this 12th day of February 2026.

JON M. SANDS
Federal Public Defender


 s/Brenda A. Sandoval
Brenda A. Sandoval
Asst. Federal Public Defender

M. Moran
M. Moran

7