TIMOTHY COURCHAINE
United States Attorney
District of Arizona
BENJAMIN GOLDBERG
New York State Bar No. 5346838
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: Ben.Goldberg@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 24-01818-2-PHX-SHD |
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCNING MEMORANDUM AND RESPONSE TO DEFENDANT'S PSR OBJECTIONS** |
| Cheyenne Mary-Lynne Ingram, | |
| Defendant. | |

The United States respectfully requests this Court sentence defendant Cheyenne Mary-Lynne Ingram to a term of imprisonment of 36 months, followed by two years of supervised release.  This recommendation is consistent with the terms of Ingram's plea agreement and properly considers the sentencing factors set forth in 18 U.S.C. § 3553(a), including the nature and characteristics of the offense, the history and characteristics of the defendant, and the need for the sentence to provide just punishment.

The United States has also reviewed the Draft Presentence Investigation Report ("PSR") and has no additions, changes, or corrections.  The PSR correctly calculates a total offense level of 27, and a criminal history category of I.  Ingram's objections to the PSR are without merit and should be overruled.

## I.     The Applicable Guidelines Range

The United States has reviewed the PSR and has no objections, additions, or corrections.  The PSR calculates a total offense level of 27 and a criminal history category of I, resulting in a Guidelines range of 70-87 months' imprisonment.  (PSR at 22.)  The

PSR recommends a variance pursuant to 18 U.S.C. § 3553(a)(1) and an ultimate sentence of 36 months, followed by a two-year term of supervised release.  (Id.)

The plea agreement in this case contains a stipulation that Ingram's sentence will not exceed the low-end of the Guidelines range.  (PSR ¶¶ 3, 93.)  It also requires the United States to recommend a downward variance at the time of sentencing.  (PSR ¶ 3.)

**II.    Argument**

### a.  Ingram's PSR objections should be overruled

On April 17, 2026, Ingram filed several objections to the PSR, arguing that the Base Offense Level was erroneously calculated, that the PSR impermissibly double-counted an enhancement, that it failed to apply a minor role reduction or a departure based on coercion or duress, and that it erred in declaring Ingram equally culpable as her co-defendant.  (Doc. 95.)  On April 22, 2026, Ingram filed a supplement to her objections, further noting that the Supreme Court granted certiorari on a case considering whether courts must defer to the commentary of the United States Sentencing Commission when considering the Guidelines.  (Doc. 96.)

While some of Ingram's arguments may present a valid basis for a downward variance, her objections are all without merit and should be overruled.

#### i.   *The PSR correctly calculated the Base Offense Level*

The PSR calculated a Base Offense Level of 20, as Ingram's offense involved a semiautomatic firearm capable of accepting a large capacity magazine, and because Ingram was a prohibited person at the time she committed the offense based on her drug use.  (PSR ¶ 29.)  Ingram objects to this calculation, arguing that the magazines seized from her vehicle were not in close proximity to the firearms, and that her self-reported drug use is not a permissible basis for the calculation.

When calculating the Base Offense Level for a firearms offense, the Guidelines instruct to start at 20 when "the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine…and (ii) the defendant (I) was a prohibited

person at the time the defendant committed the instant offense…" U.S.S.G. §2K2.1(a)(4). The Commentary to that provision notes that a semiautomatic firearm that is capable of accepting a large capacity magazine is one where the firearm "has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm." *Id.* at cmt. 2.

Ingram's argument that the firearms seized from her vehicle do not meet this standard is misplaced. She argues that because the rifles seized from her vehicle were unloaded, and because the ammunition was stored in a separate box, the ammunition cannot be considered within "close proximity" of the firearm. However, the Guidelines clearly do not require the magazine to be attached to the firearm. Indeed, "the Guidelines are not a safe-storage law. They are intended to punish firearms crimes involving particularly dangerous <u>types</u> of weapons." *United States v. Gordillo,* 920 F.3d 1292, 1300 (11th Cir. 2019) (emphasis in original).

Here, Ingram purchased her firearms with large capacity magazines. (PSR ¶ 23.) While Ingram argues that these firearms and magazines were never seized, both law enforcement and the PSR had sales records (and Ingram's admission) to rely on, and as soon as Ingram purchased the firearms and magazines, they were in close proximity to each other. Law enforcement agents also reviewed surveillance footage from the sales, further confirming the purchase of the firearms and large capacity magazines. This alone would suffice for the imposition of the Base Offense Level. *See United States v. Matthews*, 3 F.4th 1286, 1291 (11th Cir. 2021) ("[Defendant] attempted to purchase a semiautomatic rifle that comes standard with a 30-round magazine and committed the offense of making false statements to a firearm dealer…which sells both firearms and magazines. Based on these facts, it was reasonable for the district court to infer that a magazine capable of accepting more than 15 rounds of ammunition—that comes "standard" with the rifle—was

in close proximity to the rifle [defendant] sought to purchase.").

Furthermore, as Ingram concedes, law enforcement did seize firearms and largecapacity magazines on February 10, 2022.  During the search of the vehicle she was driving, agents found two rifles, and various large capacity ammunition.  While the magazines were not physically attached to the firearms, they certainly were in close proximity.  *See Gordillo,* 920 F.3d at 1300 ("[A] semiautomatic weapon—even a locked firearm inside a case—is in 'close proximity' to a high-capacity magazine in a bag no more than ten feet away in the same small bedroom.").

Ingram also argues that her self-reported drug use is not enough to establish that she was a prohibited person for purposes of enhancing the Base Offense Level.  Ingram, however, offers no support for this contention.  As Ingram concedes, she told law enforcement and Probation that she used marijuana daily (and had a marijuana pen in her vehicle) and used fentanyl from November 2021 until the end of January 2022.  Even putting aside her marijuana use, her fentanyl admission alone covered some of her large capacity magazine purchases.  While Ingram's arguments here may support a downward variance (which the PSR recommends), her contention that self-reported drug use is insufficient is misplaced.

### ii. The PSR did not engage in any impermissible double counting

Ingram next argues that the PSR engaged in double-counting when it imposed a four-level enhancement for firearms trafficking.  (PSR ¶ 31.)  Such an enhancement is appropriate when a defendant transfers two or more firearms to another individual and knew, or had reason to believe, that such conduct would result in the transfer of a firearm to a prohibited possessor.  U.S.S.G. §2K2.1(b)(5), cmt. n. 13. Here, the enhancement is appropriate because Ingram transferred the firearm to her boyfriend, Ruben Navarro Figueroa, who she knew was prohibited due to a prior domestic violence conviction.  (PSR ¶ 31.)

Ingram's entire argument is premised on the face that her Base Offense Level is 14,

- 4 -

which requires the same finding of transferring to a prohibited possessor.  However, as noted above, Ingram's Base Offense Level was calculated at 20, which contains no such requirement.  Therefore, the PSR did not engage in any impermissible double counting.[1]

### iii. A minor role reduction is not warranted

Ingram next objects to the PSR's failure to recommend a two-level reduction for minor role. While this argument may also warrant a downward variance, a reduction for minor role is not appropriate here.

"A decrease of two offense levels is warranted under U.S.S.G. § 3B1.2(b) if the defendant was a minor participant in any criminal activity.  The comments to the Guidelines clarify that a minor participant is one who plays a part in committing the offense that makes him substantially less culpable than the average participant." *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193 (9th Cir. 2011) (internal quotations and citations omitted).  Whether a minor role adjustment is appropriate is "heavily dependent upon the facts of the case," U.S.S.G. § 3B1.2 cmt. n. 3(C), and the defendant bears the burden of proving the applicability of a minor role adjustment by a preponderance of evidence. *United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir. 1994).  Ingram has failed to meet her burden, and the facts of the case make it clear that a minor-role reduction is inappropriate.

While Navarro Figueroa may have directed Ingram to purchase the firearms, Ingram actually purchased and transferred the firearms, and she operated as a substantial link in the criminal scheme's overall chain.  Furthermore, Ingram admitted to authorities that she expected to be paid for her firearm purchases, (PSR ¶ 11), and she purchased firearms on multiple occasions.  As the Ninth Circuit has found, denying a reduction based on a minor

---

[1] Ingram does note that a Base Offense Level of 20 is also appropriate when a defendant is convicted of 18 U.S.C. § 922(a)(6) and committed the offense with knowledge, or reason to believe, that the offense would result in the transfer of a firearm or ammunition to a prohibited person.  However, as noted above, this was not the basis for the imposition of Base Offense Level 20 in this case.

- 5 -

participant adjustment is not inappropriate where the defendant was a repeat offender who received compensation. *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1091 (9th Cir. 2000).

Furthermore, Ingram's offense of conviction is making a Material False Statement During the Purchase of a Firearm. Every element of her offense was conducted solely by her, as she lied on the required Form 4473 when purchasing a firearm. Her conduct, therefore, cannot leave her *substantially* less culpable than Navarro. *See, e.g., United States v. Reavis*, 48 F.3d 763, 769 (4th Cir. 1995) ("[T]he court should not only compare the defendant's culpability to that of the other participants, but also measure it against the elements of the offense of conviction."); *United States v. Narcisse*, 61 F. App'x 85, 87 (4th Cir. 2003) ("The critical inquiry is thus not just whether the defendant has done fewer bad acts than [his] codefendants, but whether the defendant's conduct is material or essential to committing the offense.") (internal citation omitted).

For similar reasons, Ingram also objects to the PSR's characterization that Ingram and Navarro Figueroa were equally culpable. (PSR ¶ 24.) While this assessment does not alter Ingram's Guidelines calculation (except as noted above for the minor role), the PSR makes clear why it believes such a culpability assessment is appropriate. Although a minor role reduction is not appropriate, Ingram's arguments regarding culpability may serve as a valid basis for a downward variance, which the PSR does recommend.

### iv. A reduction for coercion or duress is not warranted

Ingram also objects to the PSR's failure to recommend a downward departure for coercion or duress. The 2021 Guidelines allow for a departure if the defendant committed the offense because of serious coercion or duress. U.S.S.G. §5K2.12[2]. That provision, however, is unwarranted here.

While Ingram did claim to receive threats, the threats were not direct or immediate,

---

[2] This provision has since been deleted.

and Ingram acknowledged that she did not even know who truly was threatening her. (PSR ¶ 11.)  Indeed, Ingram told agents and Probation that Navarro Figueroa never threatened her, only relaying threats from unknown others.

While the Guidelines offer no commentary on this provision, the Ninth Circuit does allow for a coercion or duress defense at trial, and the jury instructions may be instructive. In the Ninth Circuit, a defendant is considered acting under duress only where there is a present, immediate, or impending threat of death or serious bodily injury, the defendant had a well-grounded fear that the threat would be carried out, and the defendant had no reasonable opportunity to escape the threatened harm. *See* Ninth Circuit Manual of Model Jury Instructions § 5.7 (2026).

Ingram meets none of these factors.  The vague threats relayed to her could not be considered immediate or impending, and she did not even know who might carry them out. Furthermore, Ingram continued to purchase firearms for Navarro Figueroa *after* speaking with law enforcement, when she had a meaningful opportunity to attempt to escape the threatened harm.  Therefore, a departure for duress is unwarranted here.

### *v. There is no basis to preserve an objection regarding the Guidelines commentary*

Finally, Ingram argues in her supplementary filing that the Supreme Court recently granted certiorari in a Fifth Circuit case regarding what level of deference courts should apply to the Guidelines commentary.  (Doc. 96.)  As Ingram acknowledges, the Ninth Circuit has already resolved this issue, finding courts should give judicial deference to the Guidelines commentary defining a "large capacity magazine".  *See United States v. Trumbull,* 114 F.4th 1114 (9th Cir. 2024).

Ingram, however, asks the Court to take judicial notice of the Supreme Court's grant of certiorari and consider the issue preserved for any subsequent appeal.  The United States objects to this request, as there is no basis to preserve such an objection.  The plea agreement that Ingram entered into explicitly waives most of her appeal rights, including

the right to appeal her sentence. As the plea agreement makes clear, "[t]he defendant waives…any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction…including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals)…" (Doc. 75 at 4.) Ingram's lawyer signed the plea on her behalf on December 15, 2025, and the plea was entered on January 9, 2026. Except for the limited circumstances set out in that plea agreement, Ingram has waived her appellate rights, including sentencing claims regarding her Guidelines calculation. Her request should therefore be denied.

### b. Ingram should be sentenced to 36 months' imprisonment

The United States respectfully requests that this Court accept the PSR's recommendation and sentence Ingram to a below-Guidelines sentence of 36 months of imprisonment. Such a sentence is appropriate in light of the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense. See 18 U.S.C. § 3553(a).

To her credit, this is Ingram's first felony offense, and she appears to have done well while on pretrial release. She was open and forthcoming with law enforcement agents during her initial interview and, as noted above, some of the bases of her PSR objections offer compelling reasons justifying a variance. The United States has taken all of those factors into consideration in recommending a seven-level variance.

However, the offense here is also a serious one. Ingram purchased 32 firearms for Navarro Figueroa, who she knew was a prohibited possessor. Three of the firearms she purchased were later recovered in Mexico, including one seized after a shootout. Furthermore, several of the firearms she purchased had large capacity magazines, adding another element of danger for the community. Perhaps most concerning, Ingram continued her illegal purchases a day after ATF agents confronted her about her behavior.

While a downward variance is appropriate, a sentence of 36 months' imprisonment, to be followed by two years of supervised release, is appropriate in light of the nature and

circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the need for the sentence to provide just punishment.

## IV.    Conclusion

All of Ingram's PSR objections should be denied, as should her request to preserve an appellate argument regarding sentencing. In light of some of her arguments, the United States respectfully requests a downward variance and respectfully requests the Court impose a sentence of 36 months' imprisonment, followed by a two-year term of supervised release.  Such a sentence is warranted given the nature and seriousness of the offense and is appropriate under the §3553(a) factors as it is sufficient, but not greater than necessary, to promote respect for the law and afford a just punishment.

Respectfully submitted this 1st day of May, 2026.


TIMOTHY COURCHAINE
United States Attorney
District of Arizona


 s/Benjamin Goldberg
BENJAMIN GOLDBERG
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Taylor Fox
Attorney for Defendant


 *s/A. Flores-Cromwell*  _____
U.S. Attorney's Office

- 10 -